UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

Respondent,

v.

JOSHUA LANDON KLIPP,

Movant.

No.  2:14-cr-00107 TLN-KJN

FINDINGS AND RECOMMENDATIONS

I.     Introduction

Movant is a federal prisoner, proceeding without counsel, with a motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255.  Movant challenges his 2016 convictions for production of child pornography (18 U.S.C. § 2251(a) [count one]) and receipt of child pornography (18 U.S.C. § 2252(a)(2) [count five]).  He is currently serving a total sentence of 300 months.

In his motion, movant challenges his sentence, asserting the following six grounds: (1) defense counsel provided ineffective assistance of counsel during the plea stage of the proceedings (count one); (2) defense counsel provided ineffective assistance of counsel during the preliminary hearing stage of the proceedings (waiver of preliminary hearing); (3) defense counsel provided ineffective assistance of counsel during the plea and sentencing stage of the proceedings

1   (notice of appeal); (4) the United States committed a fraud upon the court in the plea agreement,

2   lying about the factual basis of the plea, rendering the plea agreement void; (5) defense counsel

3   provided ineffective assistance of counsel during the plea stage of the proceedings (advice

4   resulted in involuntary plea); and (6) defense counsel provided ineffective assistance of counsel

5   during the plea stage of the proceedings (waiver provision).  (ECF No. 1.)[1]  For the reasons stated

6   herein, the undersigned recommends Movant's motion be denied.

7       II.  Factual Background[2]

8           On or about September 13, 2013, Joshua Landon Klipp delivered his
            iPhone 4, bearing serial number 87129RBTA4S, to the Chico
9           Computer Clinic (CCC) in Chico, California, to have repair services
            performed on it. Klipp voluntarily provided his four digit telephone
10          password to the CCC technician to allow access to the contents of
            the phone. The technician prepared a work order for Klipp that
11          included the warning: "I am on notice that any product containing
            child pornography will be turned over to the authorities." Klipp
12          signed the work order and left the store. During the course of the
            repair work, the technician accessed the photo album on the phone to
13          check the quality of the photo and observed numerous images of
            suspected child pornography. The technician called the Chico Police
14          Department who responded to the business site. After reviewing a
            California Department of Motor Vehicles photograph of Klipp, the
15          technician identified him as the person who sought repairs of the
            iPhone.
16
            Pursuant to a warrant, officers executed a search of Klipp's iPhone
17          and observed numerous images of suspected child pornography,
            which they submitted to the National Center for Missing and
18          Exploited Children (NCMEC) to determine if any images were of
            known victims. The NCMEC identified 871 images of child
19          pornography associated with known victims on the iPhone.

20          In a folder entitled "Young and fun" were 250 photographs, some of
            females that appeared to be older than 18 but also of individuals
21          between the ages of 4 and 17 engaged in sexual poses or performing
            sexual acts. For example, an image depicts a four-year-old female
22          child being vaginally penetrated by a penis; and another depicts an
            approximate 8-year-old female child standing between two males
23          with their penises exposed and erect. The child had a white substance
            dripping from her mouth and chin. According to the case agent, there
24          were numerous sadistic images. For example, file IMG 1670 depicts
            an adult male's erect penis inserted into the anus of a female toddler;
25          and file IMG 2478 depicts an adult male's erect penis inserted into

26      _____
        [1] "ECF No." refers to the court's electronic case management docketing system, and specific page
27      number citations refer to the page number generated by that system.

28      [2] The Factual Background is taken from the Presentence Investigation Report filed May 27, 2016.

the anus of a prepubescent female.

Officers found numerous messages between Klipp, using the screen name "deanmartin11", and minor females. Officers located and interviewed a juvenile female, H.A., who stated she met an individual online using the screen name "deanmartin11" while using an instant message application for mobile devices called Kik. Their online relationship progressed, and they also began communicating with each other using Skype video calls. During the course of their conversations, the victim told Klipp that she was age 13, when in fact she was age 12. The victim believes Klipp told her he was age 22, when in fact he was age 31. The conversations quickly involved a sexual nature. For example, on or about May 11, 2013, Klipp and the victim exchanged messages wherein Klipp made statements such as, "I so want to be your man….I love that Skype picture of you….I wanna see your wetness."

On or about May 12, 2013, Klipp sent messages to the victim including: "I need you… I love you super much… Let's have a baby together… Imagine you and I with beautiful child… I'm okay with you marrying me and always playing with others."

On May 13, 2013, Klipp and the victim exchanges messages wherein Klipp and the victim engaged in a conversation which became sexual and included the reference to a hairbrush. After telling Klipp she wanted to use the brush, Klipp replied, "Then use it baby." The victim understood this to mean using the hairbrush to masturbate. The victim told officers that she inserted the hairbrush in her vagina and took photographs with her cellphone which she sent to Klipp.

On or about June 15, 2013, Klipp and the victim exchanged text messages wherein Klipp requested the victim "add pics…sexi pics please naughty" so he could show them to a female he was with at that time.

Officers showed the victim several images that were recovered from Klipp's phone. She identified at least 24 images as images of her. A few of these included an image of the victim's left hand spreading apart the labia of her vagina (file IMG 2504); an image of the victim nude, on her knees, and bent over while spreading her buttocks apart displaying a view of her vagina and anus (file IMG 2789); an image depicting the handle of a light purple colored hairbrush inserted into a female vagina (file  IMG 2763); an image depicting the handle of a black colored hairbrush inserted into a female vagina (file IMG 2764); three images depicting the handle of a hairbrush inserted into victim's rectum (files IMG 2402, 2403, and 7a8b); and an image depicting the handle of a hairbrush inserted into the victim's vagina while the handle of a second brush is between her buttocks (file IMG 2375).

The victim estimated that Klipp masturbated five times using the back camera of his phone to focus on the lower half of his body while doing so.

1    (ECF No. 50 at 4-5, ¶¶ 5-13.)

2        III. Relevant Procedural Background

3        Following the filing of a complaint on April 2, 2014, Movant made an initial appearance

4    on April 4, 2014; counsel was appointed, and a preliminary hearing was scheduled for April 18,

5    2014.  (ECF Nos. 1 & 6.)  An Indictment was filed April 17, 2014, charging Movant with the

6    following crimes: production of child pornography (18 U.S.C. § 2251(a) [count 1]), receipt of

7    child pornography (18 U.S.C. § 2252(a)(2) [counts 2-7]), and commission of a felony offense

8    involving a minor when required to register as a sex offender (18 U.S.C. § 2260A [count 8]).  It

9    was further alleged, as to the first seven counts, that Movant had been previously convicted of sex

10    abuse of a minor involving penetration with a foreign object (Cal. Pen. Code, § 289(h)) and oral

11    copulation with a minor (Cal. Pen. Code, § 288a(b)(1)).  Criminal forfeiture was also alleged as to

12    the first seven counts as to one Apple iPhone 4, serial number 87129RBTA4S (18 U.S.C.

13    § 2253(a)).  (ECF No. 10.)

14        On April 18, 2014, Movant pled not guilty to the charges alleged in the Indictment and

15    was appointed counsel.  (ECF No. 83.)

16        At the status conference of February 19, 2015, Movant sought, and was appointed, new

17    counsel.  Attorney Michael Aye was relieved and Attorney Jan David Karowsky was appointed to

18    represent Movant.  (ECF No. 28.)

19        At a Change of Plea hearing held March 11, 2016, Movant entered a guilty plea to

20    production of child pornography as alleged in count one and to receipt of child pornography as

21    alleged in count five of the Indictment.  (ECF Nos. 44, 46 & 84.)

22        On September 9, 2016, Movant was sentenced to 300 months in federal prison in

23    accordance with the parties' plea agreement.  (ECF Nos. 62 & 87 at 12-14.)

24        On February 21, 2017, Movant filed a motion to vacate, set aside, or correct sentence

25    pursuant to 28 U.S.C. § 2255 (ECF No. 67); however, on June 19, 2017, Movant filed a request to

26    withdraw the motion (ECF No. 101).  The undersigned granted Movant's request on July 5, 2017.

27    (ECF No. 104.)

28        On August 24, 2017, Movant filed the now-pending motion to vacate, set aside, or correct

1    sentence pursuant to 28 U.S.C. § 2255.  (ECF No. 105.)  Thereafter, on April 24, 2018, the

2    Government filed a Motion to Dismiss the 28 U.S.C. § 2255 petition, or alternatively, an Answer

3    to the petition.  (ECF No. 115.)  Ultimately, Movant filed a reply to the Government's motion on

4    September 26, 2018.  (ECF No. 127.)

5        IV. Legal Standard

6        A federal prisoner making a collateral attack against the validity of his or her conviction

7    or sentence must do so by way of a motion to vacate, set aside, or correct the sentence under 28

8    U.S.C. § 2255, filed in the court that imposed sentence.  Tripati v. Henman, 843 F.2d 1160, 1162

9    (9th Cir. 1988).  Under § 2255, the federal sentencing court may grant relief if it concludes that

10   the prisoner was sentenced in violation of the Constitution or laws of the United States.  United

11   States v. Barron, 172 F.3d 1153, 1157 (9th Cir. 1999) (citing 28 U.S.C. § 2255).  Relief is

12   warranted only where a movant has shown "a fundamental defect which inherently results in a

13   complete miscarriage of justice …."  Davis v. United States, 417 U.S. 333, 346 (1974) (quoting

14   Hill v. United States, 368 U.S. 424, 429 (1962)).

15       V. Discussion

16       ***Ineffective Assistance of Counsel: Plea Stage (Ground One)***

17       Movant complains that defense counsel provided ineffective assistance of counsel by

18   advising Movant that he "was statutorily eligible for an 18 U.S.C. §2251(a) conviction," and

19   because Movant argues he was actually "ineligible for the conviction," his plea to that charge was

20   not knowing and voluntary.  (ECF No. 105 at 7-12.)

21       The Strickland Standard

22       The Sixth Amendment standard for analyzing an ineffective assistance of counsel claim is

23   well established.  To prevail on a claim of ineffective assistance of counsel, a petitioner must

24   show that his trial counsel's performance "fell below an objective standard of reasonableness"

25   and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result

26   of the proceeding would have been different."  Strickland v. Washington, 466 U.S. 668, 687-88,

27   694 (1984).

28   ////

1          Under the first prong of the Strickland test, a petitioner must show that counsel's conduct

2   failed to meet an objective standard of reasonableness.  Strickland, 466 U.S. at 687.  There is "a

3   'strong presumption' that counsel's representation was within the 'wide range' of reasonable

4   professional assistance."  Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland, 466

5   U.S. at 689).  A petitioner must rebut this presumption by demonstrating that his counsel's

6   performance was unreasonable under prevailing professional norms and was not the product of

7   "sound trial strategy."  Strickland, 466 U.S. at 688-89.  Judicial scrutiny of defense counsel's

8   performance is "highly deferential," and thus the court must evaluate counsel's conduct from his

9   or her perspective at the time it occurred, without the benefit of hindsight.  Id. at 689.

10         The second prong of the Strickland test requires a petitioner to show that counsel's

11   conduct prejudiced him.  Strickland, 466 U.S. at 691-92.  Prejudice is found where "there is a

12   reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

13   would have been different."  Id. at 494.  A reasonable probability is one "'sufficient to undermine

14   confidence in the outcome.'"  Summerlin v. Schriro, 427 F.3d 623, 640 (9th Cir. 2005) (quoting

15   Strickland, 466 U.S. at 694).  "This does not require a showing that counsel's actions 'more likely

16   than not altered the outcome,' but the difference between *Strickland*'s prejudice standard and a

17   more-probable-than-not standard is slight and matters 'only in the rarest case.'"  Richter, 562 U.S.

18   at 112 (quoting Strickland, 466 U.S. at 693).  "The likelihood of a different result must be

19   substantial, not just conceivable."  Id.

20         The Strickland standard applies in the plea context.  Hill v. Lockhart, 474 U.S. 52, 58

21   (1985). Due process requires that a guilty plea be knowing, intelligent, and voluntary.  Boykin v.

22   Alabama, 395 U.S. 238, 242-43 (1969); see also Little v. Crawford, 449 F.3d 1075, 1080 (9th Cir.

23   2006).  In determining the validity of a guilty plea, courts look to "whether the plea represents a

24   voluntary and intelligent choice among the alternative courses of action open to the defendant."

25   Hill, 474 U.S. at 56 (citation & quotation marks omitted).  A guilty plea based on an attorney's

26   advice may be involuntary if the attorney rendered ineffective assistance.  Id. at 56-57.

27   Specifically, the Strickland "prejudice" requirement "focuses on whether counsel's

28   constitutionally ineffective performance affected the outcome of the plea process."  Id. at 59.  "In

other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id.; see also Washington v. Lampert, 422 F.3d 864, 873 (9th Cir. 2005).

Additionally, the United States Supreme Court has confirmed that the Sixth Amendment right to counsel "extends to the plea-bargaining process." Lafler v. Cooper, 566 U.S. 156, 162 (2012). To prevail on such a claim, a movant must demonstrate "'gross error on the part of counsel,'" Turner v. Calderon, 281 F.3d 851, 880 (9th Cir. 2002) (quoting McMann v. Richardson, 397 U.S. 759, 772 (1970)), and that the advice he received from his counsel was "so incorrect and so insufficient that it undermined his ability to make an intelligent decision about whether to accept the [plea] offer.'" Id. (quoting United States v. Day, 969 F.2d 39, 43 (3rd Cir. 1992) (noting "that familiarity with the structure and basic content of the Guidelines...has become a necessity for counsel who seek to give effective representation").) The relevant question is not whether "counsel's advice [was] right or wrong, but...whether that advice was within the range of competence demanded of attorneys in criminal cases." McMann, 397 U.S. at 771 (holding that all defendants facing felony charges are entitled to the effective assistance of competent counsel).

### Analysis

As noted above, Movant complains he was statutorily ineligible for a conviction under 18 U.S.C. § 2251(a) because he did not employ, use, persuade, induce, entice or coerce the victim to take part in sexually explicit conduct, making counsel's advice that he plead guilty to that charge ineffective and thus Movant's plea neither knowing or voluntary. Movant is mistaken.

The statute in question provides as follows:

> (a) Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in, or who has a minor assist any other person to engage in, or who transports any minor in or affecting interstate or foreign commerce, or in any Territory or Possession of the United States, with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct, shall be punished as provided under subsection (e), if such person knows or has reason to know that such visual depiction will be transported or transmitted using any means or facility of

7

1
2
3
4
5

> interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed, if that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer, or if such visual depiction has actually been transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed.

6   18 U.S.C. § 2251(a). "Sexually explicit conduct" is defined for purposes of the section as actual

7   or simulated intercourse between persons; lascivious exhibition of the genitals, breast, or pubic

8   area; bestiality; masturbation; or sadistic or masochistic abuse. 18 U.S.C. § 2256(2).

9        Movant argues that because the victim "was already taking part in sexually explicit

10  conduct," by masturbating with a hairbrush, and because "the victim on her own produced a

11  visual depiction of this conduct and similar conduct," he then did not employ, use, persuade,

12  induce, entice or coerce the victim to take part in sexually explicit conduct. He points to certain

13  text messages to support his argument. (ECF No. 105 at 10.)

14       Movant's own factual analysis resulting in the conclusion that he is "ineligible" for

15  conviction pursuant to 18 U.S.C. § 2251(a) does not amount to ineffective assistance by counsel

16  during the plea proceedings. Defense counsel's review of the Government's evidence to assess

17  whether it could meet its burden was not deficient, or below any objective standard of

18  reasonableness.

19       The Ninth Circuit recently discussed this element of § 2251(a) as follows:

20
21
22
23
24
25
26
27
28

> "The question of whether the pictures fall within the statutory definition is a question of fact as to which we must uphold the district court's findings unless clearly erroneous...." *United States v. Overton*, 573 F.3d 679, 688 (9th Cir. 2009), as amended (citation omitted). The term "use" is not defined in § 2251(a). Thus, traditional rules of statutory interpretation are employed, commencing with the plain and common meaning of the word derived from dictionary definitions. *See United States v. Flores*, 729 F.3d 910, 914 (9th Cir. 2013). As one might expect, "use" has many definitions, but the most relevant is "to put into action or service [;] to avail oneself of [;] employ." Merriam–Webster Online Dictionary, http://www.merriam-webster.com/dictionary/use (last visited August 15, 2016). "[T]he ... doctrine of noscitur a sociis—the principle that a word is known by the company it keeps" confirms the plain meaning of the term "use." *Flores*, 729 F.3d at 915. Indeed, one of the other means of violating the statute, "employ[ing]" a minor, is listed as a synonym for "use." Merriam–Webster Online

Dictionary, http://www.merriam-webster.com/dictionary/use (last visited August 15, 2016); *see also Bailey v. United States*, 516 U.S. 137, 145, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995) (including "employ" as a definition of "use").

Adopting the plain meaning of the term "use," we agree with the district court that the evidence presented by the government sufficiently established that Laursen used or employed J.B. to produce sexually explicit images. The pornographic photographs were produced after Laursen told J.B. that the two "looked good together" and that "he *wanted* to take pictures." (emphasis added). Importantly, J.B. testified that she did not enjoy taking pornographic pictures. J.B. also deleted pictures at Laursen's request. This evidence established that Laursen directed J.B.'s actions, at a minimum engaging in active conduct that resulted in the production of child pornography. *See Overton*, 573 F.3d at 692 (requiring proof of active or coercive conduct). Laursen is correct that there was no evidence presented of physical coercion. However, in view of the disjunctive language contained in *Overton*, active conduct alone suffices to sustain a conviction under § 2251(a). *See id*.

Our reasoning is consistent with the rulings of our sister circuits, which have broadly interpreted the "use" element of the statute. *See, e.g., United States v. Sirois*, 87 F.3d 34, 42 (2d Cir. 1996) (defining "use" as occurring whenever a minor is the subject of the photography). Recently, the Sixth Circuit adopted the Second Circuit's interpretation of "use," similarly holding that this element is "fully satisfied for the purposes of the child pornography statute if a child is photographed in order to create pornography." *United States v. Wright*, 774 F.3d 1085, 1090 (6th Cir. 2014) (citation omitted). The Sixth Circuit explicitly rejected Wright's argument that the statute required proof of coercive conduct. *See id*. at 1091. The Eighth Circuit also agreed with the Second Circuit that the "use of a minor" element is satisfied even without solicitation or enticement if a defendant photographs a minor. *See United States v. Fadl*, 498 F.3d 862, 866 (8th Cir. 2007). In addition, the First Circuit recently upheld a defendant's conviction under § 2251 (a), even though he was in a consensual relationship with a fourteen-year-old, holding that "the statutory definition of 'use' is met when a defendant makes a minor the subject of a visual depiction by intentionally photographing the minor engaging in sexually explicit conduct." *Ortiz–Graulau v. United States*, 756 F.3d 12, 18–19 (1st Cir. 2014), cert. denied, —— U.S. ——, 135 S.Ct. 1438, 191 L.Ed.2d 395 (2015).

Although application of the statute in these contexts may lead to harsh results, we echo the persuasive reasoning of the Seventh Circuit that "Congress may legitimately conclude that even a willing or deceitful minor is entitled to governmental protection from self-destructive decisions that would expose him or her to the harms of child pornography." *United States v. Fletcher*, 634 F.3d 395, 403 (7th Cir. 2011), as amended (citation and internal quotation marks omitted).

United States v. Laursen, 847 F.3d 1026, 1032-1033 (9th Cir. 2017).  Thus, even acknowledging

only that evidence to which Movant points, there is no support for his argument.  Movant's active

conduct alone is sufficient to warrant a conviction of 18 U.S.C. 2251(a) because it resulted in

child pornography.  It is immaterial that the victim in this case, as Movant asserts, was "already"

masturbating.  See Ortiz-Graulau v. United States, 756 F.3d 12, 18-19 (1st Cir. 2014), cert.

denied,135 S. Ct. 1438 (2015) (evidence that defendant took photographs of underage victim

engaged in sexual conduct sufficiently satisfied the "use" element of statute prohibiting

production of child pornography statute, even though victim testified that she had not only

consented to the photographs, but had requested they be taken).  Moreover, a review of the record

makes clear that Movant's conduct prior to the specific passages he cites to could be readily

found by a jury to meet the requirements of 18 U.S.C. 2251(a).  (See ECF No. 115-5 at 3-4

[Exhibit 5].)

        Defense counsel's sworn affidavit also makes clear his representation of Movant's

interests was neither deficient nor objectively unreasonable.  Mr. Karowsky declares that in an

effort to obtain a more favorable plea bargain than his predecessor, he investigated and prepared a

social history of Movant's background.  More specifically, Mr. Karowsky declared he "read all

the discovery; reviewed the prior attorney's complete file; viewed all of the alleged pornography

at the FBI office; and reviewed the constitutionality of the guilty pleas which formed the basis

for" Movant's prior convictions.  (ECF No. 115-4 at 4, ¶ 14.)  Defense counsel engaged in

"extensive discussions" with Movant before "he chose to plead to the offered plea agreement and

have me attempt to obtain the 'favorable' sentence of 300 months."  (ECF No. 115-4 at ¶ 19.)

Mr. Karowsky's sworn declaration further indicates, in relevant part, that he "hired a paralegal to

review all of the discovery with [Movant], since he indicated he did not read well and was an

'auditory learner,'" and "did legal research regarding the nuances of the charges filed …."  (ECF

No. 115-4 at 7, ¶ 23.)  The declaration continues as follows:

> The facts against Mr. Klipp were ugly and overwhelming.  The child
> pornography images and his alleged and provable conduct were, I
> believed and so informed him, so upsetting that any jury would easily
> convict him.  I also believed and so informed him, a Judge could
> sentence him to a life sentence, based on the conduct in the instant
> case and his prior sexual conduction and conduct.

(ECF No. 115-4 at 7, ¶ 24.)  See Ayala v. Chappell, 829 F.3d 1081, 1103 (9th Cir. 2016) (quoting Strickland, 466 U.S. at 690) ("'[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable' under Strickland").  Mr. Karowsky's decades-long experience when coupled with a thorough investigation and review of the evidence and this record are entitled to significant weight.  Strickland, 466 U.S. at 689.

There was no "'gross error on the part of counsel,'" where Movant received reasonable advice from defense counsel Karowsky.  Turner v. Calderon, 281 F.3d at 880.  Certainly, Mr. Karowsky's advice fell within the range of competence demanded of an attorney practicing criminal law.  McMann, 397 U.S. at 771.

Moreover, while Movant contends his guilty plea was neither knowing nor voluntary, the record establishes otherwise.  Defense counsel's objectively reasonable legal advice – that the evidence against Movant would readily subject him to a jury's guilty verdicts were he to proceed to trial and the possibility of life in prison – was communicated to Movant, and Movant "willingly and knowingly accepted the plea agreement as offered" by the Government.  (ECF No. 115-4 at 7, ¶ 25.)  The transcript from the Change of Plea hearing confirms as much, as revealed by the following excerpt:

> THE COURT: Are you fully satisfied with the counsel, representation, and advice given to you in this case by your attorney?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Is it your understanding your attorney had discussions with the prosecutor in this case concerning your change of plea to Counts One and Five of the indictment?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Is your willingness to plead guilty because of those discussions?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Are you entering this plea of guilty voluntarily because it is what you want to do?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: I will now have the prosecutor to describe the terms of the plea agreement involved in this case.  When he's done, I'll ask

1    you a question.

2    MR. ESPINOSA: Your Honor, pursuant to the written plea
     agreement between the parties, these are the essential terms. The
3    defendant's obligations are as follows.

4    The defendant Joshua Landon Klipp will enter a guilty plea to Count
     One and Count Five of the indictment which charges a violation of
5    18 United States Code, Section 2251(a) and (e), production of child
     pornography in Count One, and a violation of 18 U.S.C., Section
6    2252(a)(2), receipt of child pornography in Count Five.

7    The defendant will also admit that he committed the offense in
     Counts One and Five, and after committing a prior -- after suffering
8    a prior conviction as set forth in the factual basis attached to the plea
     agreement as Exhibit A.

9
     Moreover, the defendant will acknowledge and stipulate to the truth
10   and accuracy of the facts set forth in Exhibit A to the plea agreement.

11   [¶ - ¶]

12   THE COURT: Are those the terms of the plea agreement with the
     government as you understand them?

13
     THE DEFENDANT: Yes, Your Honor.
14
     THE COURT: Has anyone made any promise or assurance that is not
15   in the plea agreement to persuade you to plead guilty in this case?

16   THE DEFENDANT: No.

17   THE COURT: Has anyone attempted in any way to force or threaten
     you to plead guilty in this case?
18
     THE DEFENDANT: No, Your Honor.
19

20   (ECF No. 84 at 6-9.)  Later in the hearing, the following exchange occurred:

21   THE COURT: Do you understand you have a right to plead not guilty
     to any offense charged against you and to continue in that plea, that
22   you have the right to a trial by jury, and at that trial and throughout
     your case you have the right to the assistance of an attorney, the right
23   to assist in selecting a jury, the right to see and hear all the witnesses
     and have them cross-examined in your defense, the right on your own
24   part to decline to testify unless you voluntarily elect to do so in your
     defense, the right to compel the attendance of witnesses to testify in
25   your defense, and the right to require the government to prove your
     guilt beyond a reasonable doubt?
26
     Do you understand you have all those rights?
27
     THE DEFENDANT: Yes, Your Honor.
28

12

THE COURT: Do you further understand by entering a plea of guilty, if that plea is accepted by me, there will be no trial of any kind and you will have waived or given up your right to a trial as well as those other rights I've just described?

THE DEFENDANT: Yes, Your Honor.

THE COURT: I will now have the prosecutor to state charges that you have indicated you will plead guilty to. I'm having him to explain them so I can make sure you understand the charges in Counts One and Five.

When he's done, I will ask you do you understand them.

MR. ESPINOSA: Your Honor, if this matter had gone to trial on the two counts to which the defendant is pleading guilty, the government would have been required to prove beyond a reasonable doubt the following elements.

First, with respect to Count One, violation of Title 18 United States Code, Section 2251(a), the government would have to prove that the defendant employed, used, persuaded, induced, enticed, or coerced the victim to take part in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, and that at the time of the offense, the victim was a minor, and the defendant knew or had reason to know that such visual depiction would be mailed or transported across state lines or in foreign commerce or that the visual depiction was produced using material that had been mailed, shipped, or transported across state lines or in foreign commerce by any means, or that the visual depiction was mailed or actually transported across state lines or in foreign commerce.

With respect to Count Five, a violation of 18 United States Code, Section 2252(a)(2), the government would have to prove beyond a reasonable doubt that the defendant knowingly received a visual depiction of a minor engaging in sexually explicit conduct, that the receipt of the visual depiction used any means or facility of interstate or foreign commerce or was in or affecting interstate commerce, or the visual depiction was mailed, shipped, or transported in interstate commerce.

The production of such visual depiction involved the use of a minor engaging in sexually explicit conduct, that such depiction was of a minor engaging in sexually explicit conduct, that the defendant knew that the depiction was of such conduct, and that the defendant knew that at least one of the persons engaged in sexually explicit conduct in the depiction was a minor.

THE COURT: The government said it would have to prove it at trial, but, actually, it has to be proved right now. Those are the charges that the government has stated constitute Count One and Count Five of the indictment.

Do you understand that those are the charges that are involved in those two counts?

13

1    THE DEFENDANT: Yes, Your Honor.

2    THE COURT: I will now have the government to state the facts involved with those charges.

3

4    MR. ESPINOSA: Your Honor, I believe the defendant is prepared to stipulate to the facts set forth in Exhibit A of the plea agreement, A1 through A4. At the last page of that factual stipulation is Mr. Klipp's signature indicating his acknowledgment and acceptance.

5

6    MR. KAROWSKY: Mr. Klipp is prepared to stipulate to that, Your Honor.

7

8    THE COURT: Mr. Klipp, have you read Exhibit A that's attached to the plea agreement?

9    MR. KAROWSKY: Technically, he's an auditory learner rather than a visual learner. I read every word of the plea agreement to him, including the factual basis, and we discussed all of the above, so, technically, he has not read it himself. I have read literally every word of it to him and he acknowledged he understood it and accepted it.

10

11

12   THE COURT: I understand.

13   MR. ESPINOSA: As long as Mr. Klipp is willing to agree and acknowledge that his counsel has read every word of the plea agreement, I'm satisfied that Mr. Karowsky, as an officer of the court, instead, read every word, as he said, of the factual basis.

14

15   THE COURT: Mr. Klipp, has your attorney read what he told you is Exhibit A that is attached to the plea agreement?

16

17   Has he read that to you?

18   THE DEFENDANT: Yes.

19   THE COURT: And is everything stated in Exhibit A true?

20   THE DEFENDANT: Yes, Your Honor.

21   THE COURT: And a copy of Exhibit A that I have on the bench has what appears to be a signature over your name.

22

     Is that your signature?

23

     THE DEFENDANT: Yes, Your Honor.

24

     THE COURT: Why did you sign? Why did you place your signature on Exhibit A?

25

26   THE DEFENDANT: Because everything that I went through with my attorney was true and factual and I was able to understand everything that was in there, and it was the best option at the time to sign it, understanding everything that's in the packet.

27

28

                                    14

(ECF No. 84 at 14-18.)  Exhibit A to the Plea Agreement provides, in significant part:

  a. In or about March 2013, Victim met KLIPP on-line while using KIK, an electronic communications application that facilitates text and voice messaging, and image and other content sharing. Victim and KLIPP also communicated with each other using Skype, an electronic communications application that facilitates audio and/or video chat sessions, and message and other content sharing.  KLIPP told Victim his real name during their first conversation, but Victim would refer to KLIPP as "Dean," because KLIPP used the screen name "deanmartin11."  Victim told KLIPP that she was 13 years old, when, in fact, she was 12 years old. KLIPP told Victim he was 22 years old, when, in fact, he was 31 years old. Victim identified KLIPP in a California Department of Motor Vehicles photograph as the person with whom Victim participated in Skype video calls.

  b. On or about May 13, 2013, KLIPP and Victim exchanged text messages in which they discussed sexual content, including the use of a hair brush in sexual activity. Victim told KLIPP she wanted to use the hair brush to perform a sex act and KLIPP instructed her: "[t]hen use it baby."  After this exchange, KLIPP and Victim participated in a Skype call during which Victim placed the handle of the brush into her vagina, took photographs with her cell phone, and sent images to KLIPP using Skype. Victim undertook these acts from her former residence in Valley Springs, which is in the state and Eastern District of California.

  c. Victim identified herself engaged in sexually explicit conduct, including lascivious exhibitions of the genitals or pubic area, in at least twenty-four images that KLIPP knowingly received to the KLIPP iPhone.  Victim states that she sent the images to KLIPP: "[m]ostly because he said so."  Victim also stated that during approximately five Skype calls with her, KLIPP masturbated and used the camera of the KLIPP iPhone to focus on the lower half of his body while doing so.

   On or about June 17, 2013, KLIPP knowingly received to the KLIPP iPhone two images of Victim engaged in sexually explicit conduct, including lascivious exhibitions of the genitals or pubic area.  Specifically, KLIPP knowingly received: (i) "IMG_2763.jpg", which depicts the handle of a light-purple colored hairbrush inserted into Victim's vagina; and (ii) "IMG_2764.jpg", which depicts the handle of a black colored hairbrush, with blue accent lines, inserted into Victim's vagina.

(ECF No. 46, Ex. A at 2.)

   To the extent that Movant argues that he pleaded guilty due to his counsel's urging, his motion fails.  Movant's sworn statements, given in both his written plea agreement and during the plea colloquy before this court, belie Movant's claim that his guilty plea was somehow

15

involuntary.  Sworn statements made in open court are presumed to be truthful.  See United States v. Ross, 511 F.3d 1233, 1236 (9th Cir. 2008) ("Statements made by a defendant during a guilty plea hearing carry a strong presumption of veracity in subsequent proceedings attacking the plea"); see also Blackledge v. Allison, 431 U.S. 63, 73-74 (1977); United States v. Yamashiro, 788 F.3d 1231, 1237 (9th Cir. 2015).  Here, Movant affirmed in both the written plea agreement and at the plea colloquy that he had adequate time to discuss his situation with his counsel, that his plea was entered voluntarily, and that no one had coerced or threatened him in any way to enter his plea of guilty.  (ECF No. 46 at 15; ECF No. 115-1; ECF No. 84.)  The plea agreement also contained a signed statement by defense counsel stating that counsel had discussed the plea agreement fully with his client.  (ECF No. 46 at 15; ECF No. 115-1.)  And, defense counsel stated, in a sworn declaration dated April 23, 2018, that Movant "willingly and knowingly accepted the plea agreement as offered by the AUSA."  (ECF No. 115-4 at 7, ¶ 25.)  As discussed, Mr. Karowsky's advice was not "so incorrect and so insufficient that it undermined" Movant's ability to make an intelligent decision about the plea.  Turner v. Calderon, 281 F.3d at 880; Hill v. Lockhart, 474 U.S. at 56-57.

Statements made by "the defendant, his lawyer, and the prosecutor at [a plea hearing], as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings.  Solemn declarations in open court carry a strong presumption of verity."  Blackledge v. Allison, 431 U.S. at 73-74.  Movant has failed to show his plea was not voluntary and knowing, and thus is entitled to no relief on that basis.

Lastly, while § 2255 relief is available for a plea colloquy that results in the conviction of one who is actually innocent, Bousely v. United States, 523 U.S. 614, 623 (1998), a defendant must demonstrate that "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him."  Id. (internal quotations and citations omitted).  For the reasons given above, Movant has failed to demonstrate it is more likely than not that no reasonable juror would have convicted him.  Hence, Movant's claim should be denied.

### Ineffective Assistance of Counsel: Preliminary Hearing Stage (Ground Two)

Next, Movant contends defense counsel "and other attorneys that have represented" him

16

have provided ineffective assistance of counsel by waiving the preliminary hearing where Movant did not give his permission to do so.  Movant likens this purported failure to a constructive denial of counsel.  (ECF No. 105 at 12-14.)  The Government argues the claim "is patently frivolous and fails upon the barest scrutiny."  (ECF No. 115 at 13.)  In his reply to the Government's motion to dismiss, Movant acknowledged the Federal Rules of Criminal Procedure thwart his argument.  (ECF No. 127 at 3.)

Rule 5.1(a) and (c) of the Federal Rules of Criminal Procedure provide as follows:

> (a) In General. If a defendant is charged with an offense other than a petty offense, a magistrate judge must conduct a preliminary hearing unless:
>
> (1) the defendant waives the hearing;
>
> (2) the defendant is indicted;
>
> (3) the government files an information under Rule 7(b) charging the defendant with a felony;
>
> (4) the government files an information charging the defendant with a misdemeanor; or
>
> (5) the defendant is charged with a misdemeanor and consents to trial before a magistrate judge.
>
> [¶]
>
> (c) Scheduling. The magistrate judge must hold the preliminary hearing within a reasonable time, but no later than 14 days after the initial appearance if the defendant is in custody and no later than 21 days if not in custody.

Here, Movant made his initial appearance on April 4, 2014, and a preliminary hearing was scheduled for April 18, 2014.  (ECF No. 6.)  However, on April 17, 2014, the Grand Jury returned an eight-count Indictment.  (ECF No. 10.)  Thus, because Movant was indicted prior to the date previously set for a preliminary hearing, no hearing was required.

In sum, Movant's argument lacks merit and no relief is warranted.  Therefore, Movant's claim should be denied.

### Ineffective Assistance of Counsel: Plea and Sentencing Stages (Ground Three)

In his third claim for relief, Movant argues defense counsel provided ineffective assistance of counsel by failing to file a notice of appeal despite Movant's express instruction that he do so,

1   thereby making Movant's earlier plea "not knowing and voluntary." (ECF No. 105 at 14-17.)

2   The Government contends defense counsel was not ineffective because Movant never asked

3   defense counsel to file such notice. (ECF No. 115 at 14-17.) In his reply to the Government's

4   motion to dismiss, Movant maintains he was provided ineffective assistance of counsel. (ECF

5   No. 127 at 3-7.)

6                          Specific Legal Standards Applicable to the Claim

7           Generally, an express waiver of the right to file a § 2255 petition bars a defendant from

8   moving the sentencing court to vacate, set aside, or correct the sentence. See United States v.

9   Abarca, 985 F.2d 1012, 1014 (9th Cir. 1993). "A defendant's waiver of his appellate rights is

10  enforceable if the language of the waiver encompasses his right to appeal on the grounds raised,

11  and if the waiver was knowingly and voluntarily made." United States v. Watson, 582 F.3d 974,

12  986 (9th Cir. 2009).

13          Ineffective assistance of counsel may, nevertheless, constitute a basis for a motion under §

14  2255. A waiver is unenforceable with respect to a challenge to the voluntariness of the waiver

15  because the ineffective assistance of counsel claim cannot be barred by an agreement that was

16  produced by ineffective representation. Washington v. Lampert, 422 F.3d at 871 (holding that a

17  waiver is unenforceable with regard to an ineffective assistance of counsel claim in a § 2254

18  petition). A waiver accepted in reliance on delinquent representation would deprive a petitioner

19  of the opportunity to assert his Sixth Amendment right to effective assistance of counsel. Jones v.

20  United States, 167 F.3d 1142, 1145 (7th Cir. 1999) (quoted with approval by Washington v.

21  Lampert, 422 F.3d at 871.)

22          Relevant too, "[w]here a section 2255 motion is based on alleged occurrences outside the

23  record, such as this one, no hearing is required if the allegations, viewed against the record, either

24  fail to state a claim for relief or are so palpably incredible or patently frivolous as to warrant

25  summary dismissal." Shah v. United States, 878 F.2d 1156, 1158 (9th Cir. 1989) (internal

26  citations & quotations omitted). While a hearing may be required "[w]here section 2255 motions

27  have been raised on alleged occurrences outside the record," no hearing is required if "the issue of

28  credibility can be conclusively decided on the basis of documentary testimony and evidence in

1   the record." Id.  Ultimately, that section requires only that the district court give a claim careful

2   consideration and plenary processing, including full opportunity for presentation of the relevant

3   facts." Id. at 1159 (internal citations & quotations omitted).

4        If a determination is required on a factual issue in a habeas proceeding, "district courts

5   may make factual findings based on oral testimony, evidence in the record, or a combination of

6   the two." United States v. Del Toro, No. 12-CR-00670-LHK, 2017 WL 1540788, at *7 (N.D.

7   Cal. Apr. 28, 2017) (citing Crittenden v. Chappell, 804 F.3d 998, 1006-07 (9th Cir. 2015)

8   (permitting clear error review of district court's factual findings in a habeas proceeding based

9   "solely on a cold record, rather than testimony before the district judge" (citing Fed. R. Civ. P.

10   52(a)(6))).

11   <center>Facts Re Filing of a Notice of Appeal</center>

12        Movant argues he instructed defense counsel to file a notice of appeal after sentencing

13   because he wished to "raise Ineffective Assistance claims on direct appeal," and that defense

14   counsel "told [him] not worry about it."  When defense counsel visited Movant in jail, Movant

15   again asked defense counsel about a notice of appeal, and counsel indicated he had "not filed it

16   yet" and while counsel did not "see grounds for an appeal," time remained within which to file.

17   At a subsequent jail visit, Movant again instructed defense counsel to file a notice of appeal.

18   (ECF No. 105 at 15-16 & 41-42 [Exhibit E]).

19        The Government's motion to dismiss includes a signed, sworn declaration from Movant's

20   counsel, Mr. Karowsky.  Mr. Karowsky declares, in relevant part, as follows:

21
22       I state unequivocally, Mr. Klipp did not tell me to file a notice of appeal as he left the courtroom after sentencing on September 9, 2016, as he alleges in the instant 2255 petition.

23
24       Mr. Klipp never told me to file any notice of appeal, ever.  He told me, although he was disappointed in the AUSA's refusal to accept a less harsh sentence, he was completely satisfied with my negotiations and voluntarily agreed to plead guilty with the hope of obtaining a 25 year sentence, the sentence he ultimately received.

25

26
27       In fact, I met with him in the jail after sentencing, September 10, 2016, and discussed what had occurred at sentencing and issue of possible restitution and the fact he voluntarily agreed to waive his presence at any restitution hearing and allow me to handle it alone.

28   []

<center>19</center>

1
2
3

> Never did he mention or ask me to or even discuss the possible filing of a notice of appeal. Having received the "best" sentence he could under the plea agreement, there was no factual or legal basis for an appeal.

4
5

> I also met with him on September 15, 2016 and discussed various issues as documented in my billing …. He never mentioned filing a notice of appeal then, either.

6   (ECF No. 115-4 at 7-8, ¶¶ 27-31.)

7            Analysis

8            Whether a defendant who knowingly and voluntarily waived both the right to appeal and

9    the right to collaterally attack the conviction and sentence can succeed in claiming in a habeas

10   petition that his counsel was ineffective for failing timely to file a notice of appeal is the subject

11   of in intra-circuit split. See, e.g., United States v. Flanders, No. 2:12-cr-363 TLN EFB P, 2018

12   WL 3135466, at *2 (E.D. Cal. June 27, 2018) (This "question is an open one in the Ninth

13   Circuit."); United States v. Taggart, No. 2:11-CR-0140 MCE KJN, 2014 WL 3867431, at *4

14   (E.D. Cal. Aug. 6, 2014) (collecting cases), report and recommendation adopted, No. 2:11-cr-

15   0140 MCE KJN P, 2017 WL 65260 (E.D. Cal. Jan. 6, 2017).

16           The Supreme Court reaffirmed in Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000), that "a

17   lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a

18   manner that is professionally unreasonable." The Ninth Circuit applied this principle to the

19   context of a habeas petition filed by a criminal defendant whose attorney ignored the defendant's

20   request to enter an appeal following a guilty plea that included a valid waiver of the right to

21   appeal in United States v. Sandoval–Lopez, 409 F.3d 1193, 1197 (9th Cir. 2005). The panel held

22   that an attorney's failure to follow his client's request to file a notice of appeal, even in the face of

23   a valid waiver in the plea agreement and with the likelihood that an appeal would result in greater

24   punishment for the defendant than if he were to abide by the terms of the plea agreement and

25   forego an appeal, satisfies both prongs of Strickland and is therefore per se ineffective assistance

26   of counsel, regardless of the merit of the appeal. Contradictory though it may seem, it results

27   because the defendant has suffered deficient performance from the attorney's failure to carry out

28   his instructions to appeal, and resulting prejudice from his lost opportunity to file the appeal, "not

20

1   that he lost a favorable result that he would have obtained by appeal." Id.  A petitioner

2   succeeding in demonstrating ineffective assistance of counsel on this claim enjoys limited relief:

3   the sole remedy is to "allow[ ] the appeal to proceed."  Sandoval-Lopez, 409 F.3d at 1198.

4        The plea agreement in Sandoval-Lopez included a waiver of direct appellate rights but did

5   not discuss a waiver of the right to collateral attack, and the issue was presented to the Ninth

6   Circuit on a habeas petition.  Whether the same result occurs when a valid plea agreement

7   includes a waiver of both the right to file a direct appeal and to file a collateral attack is a question

8   that the Ninth Circuit has not yet had cause to answer.  This court has twice examined the issue

9   and held that a defendant may waive such a claim but that "the scope of the waiver is limited to

10  the express terms of the plea agreement."  United States v. Crisp, No. 1:11-CR-00026-LJO, 2016

11  WL 235202, at *3 (E.D. Cal. Jan. 20, 2016).  In Crisp, the district court held that the waiver,

12  which covered "issues regarding [defendant's] conviction, restitution imposed, forfeiture order

13  and sentence" did not reach the defendant's request to file an appeal.  Id.  The district court

14  similarly held in Schneider v. United States, No. 1:10-CR-00361-LJO, 2012 WL 5522703, at *4

15  (E.D. Cal. Nov. 14, 2012), that a claim for ineffective assistance of counsel rooted in a failure to

16  file a notice of appeal fell beyond the scope of a waiver providing that "[t]he defendant ... agrees

17  not to contest her plea, conviction, restitution imposed or sentence in any post-conviction

18  proceeding, including but not limited to a proceeding under 28 U.S.C. § 2255 or § 2241."  It

19  concluded that "Ms. Schneider's claim that she received ineffective assistance of counsel when

20  counsel ignored her request to file an appeal exceeds the scope of the waiver because it does not

21  constitute a challenge to the plea, conviction, restitution imposed, or sentence.  Rather, the claim

22  challenges Ms. Schneider's inability to file an appeal" and was not barred by the waiver in the

23  plea agreement.  Id.  In a third case, the district court addressed a similar claim in a matter where

24  the plea agreement involved both an appellate waiver and a collateral-attack waiver but did not

25  address whether the collateral-attack waiver barred the ineffective assistance of counsel claim,

26  apparently because the government focused on the untruthfulness of the claim that the defendant

27  had asked his attorney to appeal rather than arguing that the waiver provision should be enforced.

28  Cruz-Hernandez v. United States, No. 1:14-CR-201-LJO-BAM-1, 2016 WL 5109607, at *7 (E.D.

1 Cal. Sept. 19, 2016).  It ordered an evidentiary hearing, though the defendant withdrew his § 2255

2 petition before the hearing could take place. No. 1:14-CR-201-LJO-BAM-1, ECF No. 52.

3      In this case, the waiver provided for the following:

4 **<u>Waiver of Appeal and Collateral Attack</u>**

5
6     The defendant understands that the law gives the defendant a right to appeal his guilty plea, conviction, and sentence. The defendant agrees as part of his pleas, however, to give up the right to appeal the guilty plea, conviction, and the sentence imposed in this case as long as the sentence does not exceed the high end of the Sentencing Guidelines variables (**that is, an adjusted offense level of 35**).  The defendant specifically gives up the right to appeal any order of restitution the Court may impose.

7
8
9
10     Notwithstanding the defendant's waiver of appeal, the defendant will retain the right to appeal if one of the following circumstances occurs: (1) the sentence imposed by the District Court exceeds the statutory maximum; and/or (2) the government appeals the sentence in this case. The defendant understands that these circumstances occur infrequently and that in almost all cases this Agreement constitutes a complete waiver of all appellate rights.

11
12
13
14     In addition, regardless of the sentence the defendant receives, the defendant also gives up any right to bring a collateral attack, including a motion under 28 U.S.C. § 2255 or § 2241, challenging any aspect of the guilty plea, conviction, or sentence, except for non-waivable claims.

15
16
17     Notwithstanding the agreement in paragraph III.A., above, that the government will move to dismiss the remaining counts against the defendant, if the defendant ever attempts to vacate his plea(s), dismiss the underlying charges, or modify or set aside his sentence on any of the Counts to which he is pleading guilty, the government shall have the rights set forth in Section II.E herein.

18
19
20 (ECF No. 46 at 12.)  The undersigned finds Movant's specific claims concerning his request that

21 defense counsel file a notice of appeal exceeds the scope of the waiver because the specific claim

22 does not constitute a challenge to the plea, conviction or sentence.  Therefore, if it is determined

23 Movant explicitly told his lawyer to file a notice of appeal and counsel did not do so, that failure

24 would amount to deficient performance and Movant was prejudiced.  <u>Sandoval-Lopez</u>, 409 F.3d

25 at 1197.

26      As noted in the specific facts recited above, Movant claims in his motion and

27 accompanying declaration that he specifically instructed Mr. Karowsky to file a notice of appeal

28 on multiple occasions.  On the other hand, Mr. Karowsky declares Movant never asked him to file

1    a notice of appeal following the sentencing proceedings on September 9, 2016, or at any time

2    thereafter.  Thus, credibility is front and center to a determination of this issue.

3            Initially, the undersigned briefly addresses inaccurate statements in Movant's reply.  To

4    the degree Movant's reply argues Mr. Karowsky's declaration is less than credible because it

5    makes reference to the period "'after Klipp's sentence[]ing on September 9, 2016,'" but then

6    infers Mr. Karowsky's declaration omits any reference or response to the subsequent occasions as

7    originally alleged by Movant ("but what about the other two requested times????") (ECF No. 127

8    at 4), Movant has cited that document only selectively.  In fact, a review of the document as a

9    whole reveals Mr. Karowsky addressed each occasion identified by Movant (immediately after

10   sentencing and in two subsequent jail visits), and declares that in all instances Movant never

11   asked him to file a notice of appeal.  (See ECF No. 115-4 at 7-8, ¶ 27 ["did not tell me to file a

12   notice of appeal as he left the courtroom after sentencing"], ¶ 28 ["never told me to file any notice

13   of appeal, ever"], ¶¶ 29-30 [at jail, day after sentencing, discussed sentencing and restitution; did

14   not discuss, nor was counsel asked to file, a notice of appeal], ¶ 31 [met with Movant on 9/15/16

15   at jail, Movant "never mentioned filing a notice of appeal then, either"].)  Movant further alleges

16   Mr. Karowsky's declaration is neither "'correct' or 'true,'" because Mr. Karowsky declared the

17   following:

18
             At the time of the commission of the offenses charged against him in
             the instant case, Mr. Klipp was on parole for sex offenses against a
19           minor, contrary to his allegation in the instant petition that he had no
             prior convictions.  He also had previously been to prison on theft
20           related offenses.

21   (ECF No. 115-4 at 4, ¶ 13.)  More specifically, Movant contends in his reply that he "never

22   claims he had [no] priors in the ("instant") petition."  (ECF No. 127 at 6.)  Movant did

23   acknowledge a prior conviction in 2009 in Butte County for sexual penetration with a foreign

24   object of a person under the age of eighteen and for oral copulation with a person under the age of

25   eighteen (ECF No. 105 at 3), but the record in this case reveals that in his original motion, filed

26   February 21, 2017, Movant wrote he "did not have any priors, no convictions, in his prior

27   history" (ECF No. 67 at 20).  While the February 2017 motion was not the "instant petition"

28   referred to in Mr. Karowsky's declaration, the fact remains that at one time Movant did file a

1    motion with this court alleging he had no prior convictions.  That statement, although made in a

2    since-withdrawn motion (ECF No. 101), could readily account for the minor or minimal

3    discrepancy.

4         The undersigned finds the statements of defense counsel Karowsky to be credible, and

5    further finds Movant's statements to the contrary not credible.  Movant waived his right to appeal

6    in the plea agreement, he orally affirmed he was waiving the right to appeal during the plea

7    colloquy, and he received a benefit from a 300-month sentence rather than the 360-month

8    sentence he otherwise faced.  (See ECF No. 46 at 12, 15 [Plea Agreement]; ECF No. 84 at 8-9

9    [Plea Colloquy], ECF No. 87 [Sentencing].)  See United States v. Del Toro, 2017 WL 1540788,

10   at *10 ("Petitioner's consistent waiver of his right to appeal belies his claim that he asked his trial

11   counsel to appeal.  In contrast, Petitioner's trial counsel's statement that Petitioner made no

12   request for an appeal is consistent with Petitioner's statements, actions, and the benefits he

13   received by giving up his right to appeal").

14        Like Del Toro, Movant's consistent on-the-record waiver of his right to appeal, coupled

15   with defense counsel's sworn statement that Movant never asked him to file a notice of appeal,

16   defeats Movant's claim.  For those reasons, Movant's claim should be denied.

17             ***Fraud by the United States Government in the Plea Agreement (Ground Four)***

18        In ground four of his motion, Movant contends the United States "committed fraud in the

19   plea agreement" by lying "in the factual basis of the plea about the facts of the case, which is

20   introduction of fabricated text messages …."  (ECF No. 105 at 18.)  The Government responds

21   that Movant's argument in this regard "is so transparently baseless it hardly merits discussion"

22   and is "nonsense."  (ECF No. 115 at 23.)

23             Relevant Background Concerning the Factual Basis for the Plea

24        The Plea Agreement includes the factual basis for the plea as represented in Exhibit A.

25   (ECF No. 46 at 16-19 [Ex. A].)  For purposes of this claim, and particularly the facts pertaining to

26   count one, the relevant portions of the agreement provide as follows:

27             CPD officers also discovered on the KLIPP iPhone numerous
             messages between an individual using the screen name
28           "deanmartin11" and several minor females.  CPD officers

24

interviewed a friend of KLIPP's who confirmed that KLIPP's screen name was "deanmartin11." CPD officers located and interviewed a 13-year-old female ("Victim") with whom KLIPP had exchanged messages using the KLIPP iPhone. During the course of two interviews, victim told law enforcement agents that:

    a.  In or about March 2013, Victim met KLIPP on-line while using KIK, an electronic communications application that facilitates text and voice messaging, and image and other content sharing. Victim and KLIPP also communicated with each other using Skype, an electronic communications application that facilitates audio and/or video chat sessions, and message and other content sharing. KLIPP told Victim his real name during their first conversation, but Victim would refer to KLIPP as "Dean," because KLIPP used the screen name "deanmartin11." Victim told KLIPP that she was 13 years old, when, in fact, she was 12 years old. KLIPP told Victim he was 22 years old, when, in fact, he was 31 years old. Victim identified KLIPP in a California Department of Motor Vehicles photograph as the person with whom Victim participated in Skype video calls.

    b.  On or about May 13, 2013, KLIPP and Victim exchanged text messages in which they discussed sexual content, including the use of a hair brush in sexual activity. Victim told KLIPP she wanted to use the brush to perform a sex act and KLIPP instructed her: "[t]hen use it baby." After this exchange, KLIPP and Victim participated in a Skype call during which Victim placed the handle of the brush into her vagina, took photographs with her cell phone, and sent the images to KLIPP using Skype. Victim undertook these acts from her former residence in Valley Springs, which is in the state and Eastern District of California.

    c.  Victim identified herself engaged in sexually explicit conduct, including lascivious exhibitions of the genitals or pubic area, in at least twenty-four images that KLIPP knowingly received to the KLIPP iPhone. Victim stated that she sent the images to KLIPP: "[m]ostly because he said so." Victim also stated that during approximately five Skype calls with her, KLIPP masturbated and used the camera of the KLIPP iPhone to focus on the lower half of his body while doing so.

(ECF No. 46 at 16-17.)

    At the Change of Plea hearing, the following colloquy occurred:

    THE COURT: I will now have the government to state the facts involved with those charges.

    MR. ESPINOSA: Your Honor, I believe the defendant is prepared to stipulate to the facts set forth in Exhibit A of the plea agreement, A1 through A4. At the last page of that factual stipulation is Mr. Klipp's signature indicating his acknowledgment and acceptance.

    MR. KAROWSKY: Mr. Klipp is prepared to stipulate to that, Your

Honor.

THE COURT: Mr. Klipp, have you read Exhibit A that's attached to the plea agreement?

MR. KAROWSKY: Technically, he's an auditory learner rather than a visual learner. I read every word of the plea agreement to him, including the factual basis, and we discussed all of the above, so, technically, he has not read it himself. I have read literally every word of it to him and he acknowledged he understood it and accepted it.

THE COURT: I understand.

MR. ESPINOSA: As long as Mr. Klipp is willing to agree and acknowledge that his counsel has read every word of the plea agreement, I'm satisfied that Mr. Karowsky, as an officer of the court, instead, read every word, as he said, of the factual basis.

THE COURT: Mr. Klipp, has your attorney read what he told you is Exhibit A that is attached to the plea agreement?

Has he read that to you?

THE DEFENDANT: Yes.

THE COURT: And is everything stated in Exhibit A true?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And a copy of Exhibit A that I have on the bench has what appears to be a signature over your name.

Is that your signature?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Why did you sign? Why did you place your signature on Exhibit A?

THE DEFENDANT: Because everything that I went through with my attorney was true and factual and I was able to understand everything that was in there, and it was the best option at the time to sign it, understanding everything that's in the packet.

(ECF No. 84 at 14-18.)

                        Analysis

        "[W]hen a plea rests in any significant degree on a promise or agreement of the

prosecutor, so that it can be said to be part of the inducement or consideration, such promise must

be fulfilled."  Santobello v. New York, 404 U.S. 257, 262 (1971).

        The crux of Movant's complaint that the Government committed a fraud upon the court in

                                        26

1   stating the factual basis for the plea effectively requires the undersigned to ignore the record.  Yet

2   a careful review of the record reveals there was no fraud by the Government and no fraud was

3   perpetrated upon the court as a part of the plea.

4   　　　　First, when the Government prosecutor was asked to recite the factual basis of the plea, he

5   expressly referenced the written factual basis for the plea, or Exhibit A to the Plea Agreement.

6   Movant expressly stated under oath that his attorney read every word of the factual basis to him

7   before he signed it, and that he understood "everything that was in" the factual basis for the plea,

8   that it was true, and Movant acknowledged his signature on the last page of the exhibit.

9   　　　　A review of Exhibit A references a summary of the facts the Government was relying

10  upon to meet its burden of proof; it does not recite each text message sent between Movant and

11  the victim verbatim, nor does it describe with particularity the substance of the numerous Skype

12  calls between the victim and Movant.  Nor is such a verbatim recitation required in a factual

13  basis.

14  　　　　Rule 11(b)(3) of the Federal Rules of Criminal Procedure requires that "[b]efore entering

15  judgment on a guilty plea, the court must determine that there is a factual basis for the plea."

16  Nothing in the rule requires that all the evidence the Government could rely upon to prove its case

17  be noted.  Exhibit A makes reference to conduct that occurred over the course of at least three

18  months (March 2013 to mid-June 2013), an unidentified number of text messages, an unidentified

19  number of Skype sessions, and the sharing and receipt of an unidentified number of lewd and

20  lascivious images.  Notably, the victim indicated she sent images to Movant at his direction:

21  "'[m]ostly because he said so.'"  Movant's argument hinges on his selection of verbatim text

22  messages whereas the factual basis at issue does not; rather, it is a summary of the evidence

23  against Movant.  Comparing verbatim text message content to summary content does not equate

24  to any fabrication of evidence as asserted by Movant.  It is plain the Government paraphrased the

25  content of the text messages referenced in Exhibit A to the Plea Agreement. And the

26  Government's argument that Movant's "claim ignores the context of his discussion with his

27  victim" (ECF No. 115 at 23) is supported by an exhibit to Movant's own motion.  (See ECF No.

28  105 at 31 [Exhibit A].)

1   In sum, this claim too should be denied.

2   ***Ineffective Assistance of Counsel During the Plea Stage (Ground Five)***

3   In his ground five, Movant asserts that because defense counsel was ineffective, Movant's

4   "decision to enter into the plea was not knowing and voluntary." (ECF No. 105 at 21.) After

5   rehashing his previous arguments – all of which the undersigned has determined above to be

6   without merit (ECF No. 22-27) – Movant contends he "would have went to trial had Mr.

7   Karowsky advised [him] that the evidence the United States had submitted is insufficient for the

8   conviction." (ECF No. 105 at 27.)

9   Because the undersigned has already recommended that Movant's earlier ineffective

10  assistance of counsel claims (grounds 1-3) be denied for a lack of merit, and has also

11  recommended Movant's claim that the Government committed a fraud upon the court (ground 4),

12  none of the circumstances, separately or collectively, serve to establish a claim of ineffective

13  assistance of counsel here as asserted in ground five. Said another way, because there was

14  evidence to support a conviction pursuant to § 2251(a) as alleged in count one, counsel's

15  recommendation to Movant that he enter a guilty plea to that same count does not amount to

16  deficient performance, nor does the record support Movant's claim that the Government

17  committed a fraud upon the court, all that remains is a determination of whether his plea was

18  knowing and voluntary.

19  As excerpted and referenced throughout the findings, a review of the Plea Agreement and

20  a review of the transcript from the Change of Plea proceeding held March 11, 2016, reveal

21  Movant's plea to be both knowing and voluntary. (See ECF Nos. 46 & 84.) Movant's plea was

22  not involuntary because there was no ineffective assistance of counsel. Hill v. Lockhart, 474 U.S.

23  at 56-57.

24  There was no deficient or prejudicial advice given, nor fraud committed. Hence, when

25  Movant acknowledged, under oath, having read and carefully reviewed the plea agreement with

26  defense counsel, and that he was giving up his various constitutional rights with a full

27  understanding, and in the absence of threat or force (ECF No. 84 at 2-3, 6, 9, 14-15, 17-19), his

28  guilty pleas to counts one and five of the Indictment were knowing and voluntary.

1    For the foregoing reasons, Movant's claim should be denied.

2    ***Ineffective Assistance of Counsel During the Plea Stage (Ground Six)***

3    Finally, Movant alleges ineffective assistance of counsel because Mr. Karowsky allegedly

4    advised Movant that the "plea agreement did not have a provision in it that would bar an

5    Ineffective Assistance of Counsel claim" as a result of "a memorandum to all federal prosecutors

6    to no longer seek a plea agreement to have a defendant waive claims of Ineffective Assistance of

7    Counsel on a collateral attack or direct appeal." (ECF No. 105 at 28.) Movant complains Mr.

8    Karowsky ignored his request "to provide [him] with an affidavit and skipped over the subject

9    about the Ineffective Assistance of Counsel waiver." (Id.)

10   Movant cannot show any deficiency on Mr. Karowsky's part, nor can he establish any

11   prejudice. First, Mr. Karowsky's legal advice, even assuming it is true as reported by Movant,

12   was not deficient. As explained above, claims of ineffective assistance of counsel are not

13   prohibited where a defendant entered a guilty plea or pleas and then subsequently filed a motion

14   to vacate or set aside a judgment or sentence. Washington v. Lampert, 422 F.3d at 871. Plainly,

15   Mr. Karowsky's advice, whether addressed in his affidavit of April 2018 or not, was reasonable.

16   Moreover, Movant cannot establish prejudice where the undersigned has now considered the

17   merits of his claims of ineffective assistance of counsel; Movant's guilty pleas did not bar

18   consideration of the claim and, therefore, there is no reasonable probability of a different

19   outcome. Strickland, 466 U.S. at 695 ("An assessment of the likelihood of a result more

20   favorable to the defendant must exclude the possibility of arbitrariness, whimsy, caprice,

21   'nullification,' and the like"). Notably too, whether the Government argues otherwise after the

22   fact cannot be attributed to Mr. Karowsky.

23   Simply put, Movant has failed to establish either prong required by the Strickland

24   analysis. Mr. Karowsky did not perform deficiently, nor did Movant suffer prejudice by entering

25   into a Plea Agreement that has allowed for consideration of the merits of his claims of ineffective

26   assistance of counsel.

27   ***Movant's Request for an Evidentiary Hearing***

28   An evidentiary hearing is not warranted where, as here, "the record refutes the applicant's

29

1  factual allegations or otherwise precludes habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474

2  (2007); see also Cullen v. Pinholster, 563 U.S. 170, 183 (2011) (citing Schriro with approval);

3  Estrada v. Scribner, 512 F.3d 1227, 1235 (9th Cir. 2008); Shah v. United States, 878 F2d at 1158-

4  1159.  Therefore, Movant's request for an evidentiary hearing should be denied.

5                                        **CONCLUSION**

6            Movant's claims should be denied for the reasons explained above.  Following review, the

7  undersigned determined there were no fundamental defects which inherently resulted in a

8  complete miscarriage of justice.  Davis, 417 U.S. at 346.

9            IT IS HEREBY RECOMMENDED that:

10           1.  Movant's August 25, 2017, motion to vacate, set aside, or correct his sentence pursuant

11  to 28 U.S.C. § 2255 be denied; and

12           2.  The Clerk of the Court be directed to close the companion civil case No. 2:17-cv-

13  00393-GEB-KJN.

14           These findings and recommendations are submitted to the United States District Judge

15  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

16  after being served with these findings and recommendations, any party may file written

17  objections with the court and serve a copy on all parties.  Such a document should be captioned

18  "Objections to Magistrate Judge's Findings and Recommendations."  If movant files objections,

19  he shall also address whether a certificate of appealability should issue and, if so, why and as to

20  which issues.  A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the

21  applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C.

22  § 2253(c)(3).  Any response to the objections shall be served and filed within fourteen days after

23  service of the objections.  The parties are advised that failure to file objections within the

24  specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951

25  F.2d 1153 (9th Cir. 1991).

26  Dated:  September 8, 2020

27  .257

28  KENDALL J. NEWMAN
    UNITED STATES MAGISTRATE JUDGE